

FILED
August 25, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002046859

Philip J. Rhodes, SBN 161537
LAW OFFICE OF PHILIP RHODES
P.O. Box 602062
Sacramento, CA 95860
(916) 612-4399
(916) 720-0403 fax
*pjrhodes@philrhodeslaw.com*

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

BETTY J. PAINTER,

    Debtor.

Case No. 09-34957- D-13

DBJ-001

**OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

Date:  September 8, 2009
Time:  1:00 p.m.
Dept:  D
       Judge Robert S. Bardwil
       501 I Street, Courtroom 34

      The debtor owns an 81.6 acre ranch in Round Mountain, California, in Shasta County north of Redding. The ranch, known as the Terry Mill Ranch, is operated by the debtor's son, Brent Painter. Mr. Painter has cattle on the ranch, and grows apple trees and Christmas trees. The debtor purchased the Terry Mill ranch from Charlie Bull in 2004 and financed the purchase with a promissory note to the seller. Declaration of Betty Painter, ¶¶ 3,4. She has regretted using the seller financing ever since then.

      Charlie Bull's passed away after the debtor's purchase of the ranch and the promissory note to Charlie Bull passed to his descendants, the John Bull creditor group. Prior to the debtor's purchase of the ranch, the descendants thought that they would inherit the ranch from Charlie Bull. Instead, he sold it to the debtor. Declaration of Betty Painter, ¶ 6. As a result, Charlie Bull's descendants have continually harassed the debtor and attempted to foreclose on the Terry Mill ranch at every possible opportunity.

The Terry Mill ranch has substantial equity to protect the John Bull creditor group. They allege they are owed $270,817.93, which is far less than the $460,000 purchase price in 2004. The Terry Mill ranch itself is worth $1 million because it is in substantially better condition than when the debtor purchased the ranch. In addition, the Terry Mill ranch includes very valuable water rights, which were deeded in 1863 and adjudicated in 1920. The water rights alone have an independent market value of $1 million. Declaration of Betty J. Painter, ¶¶ 4, 5. Thus, a substantial equity cushion exists to protect the John Bull creditor group.

## I. The Moving Parties Do Not Provide Evidence of a Default

The declaration of John Bull does not set forth any actual detailed evidence regarding the debtor's alleged default. John Bull states, in the barest conclusory language, that "the debtor has defaulted in her obligations under the Note for failure to make payments as required." Bull Declaration, Exhibit 4. The declaration does not set forth any detail whatsoever about how the debtor allegedly failed to make payments as required. In addition, the declaration does not authenticate any documents other than the promissory note and the deed of trust. Given the history of the John Bull creditors' previous attempts to wrongfully foreclose, the court should carefully scrutinize any allegations of default by the John Bull creditors.

Previously, the John Bull creditors declared a wrongful default and commenced a foreclosure proceeding over property taxes. The Shasta County tax assessor was reassessing the Terry Mill ranch property value after Brent Painter requested the assessor do so. Mr. Painter had paid the first installment already, which would have constituted an overpayment upon a reduction of the assessed value. At the tax assessor's suggestion, Mr. Painter chose to wait until the new reduced assessment was made to pay the second installment of the property taxes. Declaration of Brent Painter, ¶ 8.

However, within a few days, John Bull had swept in to the tax assessor's office, found that the second installment had not been fully paid, and advanced the funds to pay the property taxes. Then, he immediately declared a default and immediately commenced a foreclosure proceeding. Declaration of Brent Painter, ¶ 9. No justification for an immediate foreclosure proceeding existed. No harm would have resulted if the John Bull creditors had waited for the tax assessor's reassessment and given the

debtor a reasonable opportunity to pay the second installment. This is just one example of the John Bull creditors' overzealous enforcement of the loan obligation.

On another occasion, John Bull threatened to commence foreclosure proceedings if the debtor did not pay the property insurance annual premium in full at the beginning of the policy period. The debtor paid the premium in four quarterly installments as permitted by the insurer. Nevertheless, John Bull attempted to pay the full annual premium by going around the debtor's insurance agent and sending the payment to the insurer's home office. Declaration of Brent Painter, ¶ 11. Certainly, if the insurer had accepted the payment, John Bull would have commenced another foreclosure proceeding.

Given the past conduct of the John Bull creditors, the court should carefully scrutinize any alleged default. The John Bull creditors have not offered any evidence whatsoever that the debtor defaulted prior to the notice of default. The debtor has had to pay thousands of dollars extra in fees and costs to cure the prior wrongful foreclosures. The court should not permit the John Bull creditors to continue with another wrongful foreclosure proceeding.

## II. The Moving Parties Do Not Have Standing to Bring the Motion for Relief

According to the actual evidence in this case, the debtor allegedly owes payments on the promissory note to the Charles E. Bull 1999 Revocable Living Trust. John Bull's declaration authenticates both the promissory note and the deed of trust allegedly owed to the Charles Bull Trust by the debtor. But, his declaration fails to provide any evidence that the promissory note was assigned to the moving parties. Therefore, the court should deny the motion due to the moving parties' lack of standing.

## III. The Moving Parties Are Adequately Protected By a Substantial Equity Cushion

The Terry Mill ranch and the associated water rights are worth approximately $2 million. Declaration of Betty Painter, ¶ 5. Despite the bankruptcy and surrounding circumstances, a new lender is willing to fund a loan of $550,000 secured by a first deed of trust on the Terry Mill ranch. Declaration of Betty Painter, ¶ 8; Declaration of Brent Painter, ¶¶ 17, 18. The moving parties value the Terry Mill ranch at $279,000, but do not have any admissible, competent evidence to support their valuation.

Furthermore, the John Bull creditors' alleged valuation is contradicted by other facts in this case. First, the debtor purchased the property in 2004 for substantially more than $279,000, and the debtor has made significant improvements to the condition of the ranch since then. Second, the debtor has a new lender willing to lend $550,000 secured by the Terry Mill ranch. No lender would lend such a sum on real property valued at $279,000. Finally, water rights have become substantially more valuable in the intervening 5 years since the debtor purchased the property.

The Terry Mill ranch property is also essential for an effective reorganization. The Terry Mill ranch, by any reasonable estimate, has a substantial amount of equity. The value of the Terry Mill ranch is necessary for the payment of the debtor's other creditors. The debtor has little other income each month to pay her obligations although she does remain current on them. But, she will need the equity in the property to pay her obligations in full. In particular, the proceeds from the second note on her house were used for the Terry Mill ranch. The second is now fully unsecured by any value in her Citrus Heights property. So, she will need the equity in the Terry Mill ranch to eventually pay the second note.

## CONCLUSION

The moving parties have not offered any evidence of an actual default in the loan obligation other than a conclusory allegation that the debtor defaulted. This conclusory allegation, with specific factual proof, is not sufficient evidence to support the granting of relief, particularly given the history of the creditors' conduct.

In addition, the moving parties are adequately protected by a substantial equity cushion of as much as 6 times the amount allegedly owed. The Terry Mill ranch value of $2 million provides more than sufficient adequate protection for their alleged obligation of $275,000.

LAW OFFICE OF PHILIP RHODES

Dated: August 25, 2009

/s/ Phil Rhodes
PHILIP J. RHODES
Attorney for Debtor